# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JILL M. LUNDSTEN,**

    Plaintiff,

  -vs-

**CREATIVE COMMUNITY LIVING SERVICES, Inc. LONG TERM DISABILITY PLAN, CREATIVE COMMUNITY LIVING SERVICES, Inc., and AETNA LIFE INSURANCE COMPANY,**

    Defendants.

Case No. 13-C-108

## DECISION AND ORDER

Jill M. Lundsten moves for summary judgment as to the correct standard of judicial review governing the defendants' termination of her long-term disability benefits. Lundsten argues that she is entitled to *de novo* review because the plan administrator, Aetna Life Insurance Company, did not decide her appeal in a timely manner. For the reasons that follow, Lundsten's motion is denied. The denial of benefits is not subject to *de novo* review. Instead, it is subject to a deferential inquiry into whether the denial was arbitrary or capricious.

## BACKGROUND

Lundsten was employed by Creative Community Living Services, Inc. as a benefits coordinator in the human resources department. Starting in June of 2009, Lundsten received benefits under the Creative Community Disability Plan, but her benefits were terminated effective December 15, 2011. Lundsten immediately

appealed. Aetna explained to Lundsten as follows:

> This letter confirms receipt of your appeal request on December 16, 2011. We will now begin the review of your appeal. You will be notified in writing of our decision no later than January 29, 2012.
>
> We may extend the time needed to complete our review of your appeal if special circumstances require such an extension in which case you will be notified before January 29, 2012 of the need for an extension.

Plaintiff's Proposed Findings of Fact ("PPFF"), ¶ 5.

On February 1, 2012, Stephen Simpson from Aetna wrote a letter confirming his discussion with Lundsten, during which Lundsten advised that "additional documentation exists" which may support her claim for LTD benefits. Simpson also explained that he would order "updated clinical records from Dr. Gorelick, Ms. Grimes, Dr. Rhodes and Dr. Thompson." Simpson ordered these records on February 22. Simpson also noted that he expected to "commence appeal review on 02/28/12" and that Aetna would "render a written determination within 11 days, or on or before 03/09/12." *Id.*, ¶ 7.

On March 5, Simpson wrote to Lundsten as follows:

> As you are aware, the appeal review was on hold pending receipt of additional information for the review. We have received letters from your friend and your mother, as well as your letter, dated 02/19/12. We have also received records that I requested from Ms. Grimes, Dr. Rhodes and Dr. Thompson. However, on 03/01/12, our medical records request vendor was advised by Dr. Gorelick's office that they would require about two more weeks to comply with the request for records. As additional documentation exists which may support your claim for LTD benefits, the appeal review will remain on hold until the additional materials are received. I expect to receive this documentation on or before 03/19/12. If additional time is required, then I will advise you

>accordingly. We expect to commence the appeal review on 03/20/12. . .
>
>Upon receipt of the additional documentation, we will render a written determination within 11 days, or on or before 03/30/12. We may extend the time for up to an additional 45 days if special circumstances require such an extension, in which case you will be notified prior to the end of the first 45 day period. . . .

*Id.*, ¶ 13.

Simpson followed up on March 30, explaining that Aetna was "in the process of reviewing" Lundsten's appeal request, but that additional time was necessary to complete a telephonic "peer-to-peer" consultation between Lundsten's treating providers and an independent physician. Aetna extended the time for a decision to May 14. *Id.*, ¶ 16. On May 4, Simpson transmitted Lundsten's medical records for peer reviews on physical medicine, rehabilitation, and psychology. *Id.*, ¶ 20.

While the review process was pending, Lundsten's application for Social Security Disability benefits was granted by an Administrative Law Judge. At various points, Lundsten promised to provide Aetna with a copy of the award. In an internal note, Simpson wrote: "[Lundsten] has indicated that she would send in the SSDI award information, which might also include a decision and order as there was a hearing. The appeal review has been on hold pending this information so that it could be included with the physician review request, but the information has not been received." *Id.*, ¶ 19. Lundsten never submitted a copy of the award.

On May 15, Simpson advised Lundsten that an "independent peer reviewer specializing in Psychology is reviewing the medical information in your claim file."

Simpson further explained that he would "send a copy of the completed peer review report to Ms. Grimes for her review and/or comment. She will have 10 days to offer any comment or other response. As Ms. Grimes may provide additional information which may support your claim for disability benefits, the appeal review is being placed on hold to permit this process to occur. We will expect Ms. Grimes to review the report and provide any response on or before 05/28/12. We will render a written determination on 06/01/12." *Id.*, ¶ 21. Ms. Grimes never responded. However, on May 29, Simpson wrote a similar letter regarding peer review in rehabilitation, extending the time for a written determination until June 15. *Id.*, ¶ 24.

On June 15, Aetna upheld the initial denial/termination of benefits. In the letter, Aetna noted that Lundsten had been approved for Social Security Disability benefits.

> However, our disability determination and the SSD determination are made independently and are not always the same. The difference between our determination and the SSD determination may be driven by the Social Security Administration (SSA) regulations. We have reviewed your claim for LTD benefits consistent with the LTD policy requirements and provisions cited above. As part of that review, we obtained updated clinical information from your treating providers. Additionally, we may have information that is different from what SSA considered, or we may not have been provided with the basis for the SSD determination, and the evidence that was relied on for the SSD determination has not been identified to us. Therefore, even though you may be receiving SSD benefits, we are unable to give it significant weight in our determination, and we find that you are not eligible for continuing LTD benefits based on the LTD policy definition of Total Disability or Totally Disabled cited above.

*Id.*, ¶ 26.

## ANALYSIS

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The plain language of the rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must accept as true the evidence of the nonmovant and draw all justifiable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate only if, on the record as a whole, a rational trier of fact could not find for the non-moving party. *Rogers v. City of Chi.*, 320 F.3d 748, 752 (7th Cir. 2003).

When a claimant appeals a denial of benefits, the plan administrator is required to provide notice of the plan's benefit determination "within a reasonable period of time, but not later than [45] days after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances . . . require an extension of time for processing the claim." 29 C.F.R. § 2560.503-1(i)(3)(i), (i)(1)(i). "If the plan administrator determines that an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial [45]-day period. In no event shall such extension exceed a period of [45] days from the end of the initial period." *Id.* In the

event of an extension "due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information." 29 C.F.R. § 2560.503-1(i)(4). In sum, the regulations impose a 45-day time limit that can be extended to 90 days, plus whatever time is appropriately tolled for the receipt of information from the claimant.

Lundsten lodged her appeal on December 16, 2011, and it wasn't decided until June 15, 2012—a span of 182 days. The defendants argue that the extra time was appropriately extended and tolled under the foregoing regulations. Even if the defendants did not strictly comply with the applicable extension/tolling guidelines, it does not necessarily follow that Lundsten is entitled to *de novo* review in federal court. Instead, a technical violation can be excused "if the administrator has been substantially compliant with the requirements of ERISA. In cases in which the substantial compliance doctrine applies, a plan administrator, notwithstanding his or her error, is given the benefit of deferential review of the administrator's determination about a claim under the arbitrary and capricious standard (assuming, of course, that the plan document vests the administrator with discretion),[1] rather than more stringent de

---

[1] The Plan provides that Aetna has the "discretionary authority" to "determine whether and to what extent employees and beneficiaries are entitled to benefits" and "construe any disputed or doubtful terms of this policy." It further provides that Aetna "shall be deemed to have properly exercised such authority. It must not abuse its discretion by acting arbitrarily and capriciously. Aetna has the right to adopt reasonable: policies; procedures; rules; and interpretations; of this policy to

novo review." *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 362 (7th Cir. 2011) (citing *Rasenack v. AIG Life Ins. Co.*, 585 F.3d 1311, 1317 (10th Cir. 2009)); *see also Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 690 (7th Cir. 1992) ("In determining whether a plan complies with the applicable regulations, substantial compliance is sufficient").

Lundsten argues that the substantial compliance doctrine does not apply when the administrator issues an untimely decision on a request for review. Under the old version of the regulation, failure to issue a timely decision resulted in the request for review being "deemed denied," thus enabling a claimant to "bring a civil action to have the merits of his application determined." *Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 106 (2d Cir. 2005). However, substantial compliance with the deadline was viewed as a reason "not to penalize a plan administrator by requiring de novo review" in federal court. *Id.* (citing *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003)). As noted in *Gilbertson*, a "hair-trigger" rule requiring *de novo* review of every late decision "could inhibit collection of useful evidence and create perverse incentives for the parties. Even in cases where additional medical information is clearly necessary for a proper decision, administrators would have an incentive to issue a final denial on the inadequate record in order to preserve their right to deferential review, rather than to wait for the information and risk losing deference."

---

promote orderly and efficient administration." Defendants' Additional Proposed Findings of Fact ("DAPFF"), ¶ 20. This language "indicates with the requisite if minimum clarity that a discretionary determination is envisaged." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000).

*Id.* On the other side, "claimants might be encouraged to delay a final decision by suggesting that they intend to produce additional information, only to pull the plug and demand *de novo* review in federal court on the 121st day."[2] *Id.* Such a result was considered "antithetical to the aims of ERISA. ERISA's procedural regulations are meant to promote accurate, cooperative, and reasonably speedy decision-making, not to generate an endless stream of business for employment lawyers." *Id.*

In 2000, § 2560.503-1 was amended, and the "deemed denied" provision was replaced with the following paragraph:

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be *deemed to have exhausted* the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503-1(l) (emphasis added). While this amendment "called into question the continuing validity of the substantial compliance test," courts have generally assumed its "continued existence." *Rasenack* at 1316-17. One court confronted the issue directly and held that the "substantial compliance doctrine is not applicable under the revised regulations." *Reeves v. UNUM Life Ins. Co. of Am.*, 376 F. Supp. 2d 1285, 1293 (W.D. Okla. 2005) (internal citations omitted). *Reeves* cited the Department of Labor's interpretive guidance in the preamble to the new regulation,

---

[2] Under the old version of the regulation, the deadline was 60 days, which could be extended an additional 60 days (plus tolling). The amended regulation, as noted above, shortened the time line to 45/90 days.

which explained that the Department's "intentions in including [§ 2560.503-1(l)] in the proposal were to clarify that the procedural minimums of the regulation are essential to procedural fairness and that a decision made in the absence of the mandated procedural protections *should not be entitled to any judicial deference*." 2000 WL 1723704 (F.R.), 65 Fed. Reg. 70246, 70255 (Nov. 21, 2000) (emphasis added).

As an initial matter, *Reeves* did not discuss whether the Department of Labor's interpretive guidance is entitled to deference pursuant to *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984) or *Auer v. Robbins*, 519 U.S. 452 (1997). The Court agrees with the weight of authority which finds that the Department's guidance is not entitled to deference. *Seger v. Reliastar Life*, No. 3:04 CV 16/RV/MD, 2005 WL 2249905, at *9 (N.D. Fla. Sept. 14, 2005) (no *Chevron* deference because the Department was not delegated the authority to "regulate the scope of the judicial power vested by" ERISA); *Towner v. CIGNA Life Ins. Co. of N.Y.*, 419 F. Supp. 2d 172, 179 (D. Conn. 2006) (no *Chevron* deference, citing *Seger*); *Stefansson v. Equitable Life Assurance Soc'y of U.S.*, No. 5:04CV40(DF), 2005 WL 2277486, at *12, n.18 (M.D. Ga. Sept. 19, 2005) (no *Chevron* deference); *Goldman v. Hartford Life & Accident Ins. Co.*, 417 F. Supp. 2d 788, 803-04 (E.D. La. 2006) (no *Chevron* or *Auer* deference). Accordingly, the Department's interpretation is "entitled to respect" only to the extent that it has the "power to persuade." *Gonzales v. Oregon*, 546 U.S. 243, 256 (2006) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). The Department's interpretation is not persuasive in this context because §

2560.503-1(l) is completely silent regarding the standard of review to be applied in federal court. *See Goldman*, 417 F. Supp. 2d at 804 ("nothing about the new regulation is inconsistent with [the] idea of looking to the record in each case to determine if deference is warranted notwithstanding the administrator's failure to comply with the regulation").

Moreover, an administrator's failure to comply with the mandated procedures means that administrative remedies are "deemed exhausted," but "there is no reason to deem the administrative remedies exhausted when . . . they have in fact been exhausted." *Neal v. Christopher & Banks Major Med. Plan*, 651 F. Supp. 2d 890, 905 (E.D. Wis. 2009). In this respect, *Reeves* is distinguishable because the administrator in *Reeves* never issued a decision on the claimant's appeal. In other words, the "deemed exhausted" provision does not apply when, as here, the claimant waits for a substantive decision instead of aborting the administrative process. Since Lundsten allowed the administrative process to play out, there is an "actual decision . . . to which [the Court] can defer." *Id.*; *see also Demirovic v. Bldg. Serv. 32 B-J Pension Fund*, 467 F.3d 208, 212 (2d Cir. 2006) ("rather than go directly to court when the Fund failed to issue a timely determination, Demirovic chose to appeal. She then waited for and received a timely decision on her appeal. This eventual decision constitutes a final decision and exercise of the Fund's discretion, to which we must defer.").

Accordingly, the Court must decide whether the defendants substantially complied with the applicable time limits, discussed above. §§ 2560.503-1(i)(3)(i),

(i)(1)(i). An administrator who "fails to render a timely decision can only be in substantial compliance with ERISA's procedural requirements if there is an ongoing productive evidence-gathering process in which the claimant is kept reasonably well-informed as to the status of the claim and the kinds of information that will satisfy the administrator." *Rasenack* at 1317 (quoting *Gilbertson* at 636). Aetna's decision was delayed pending the receipt of additional information, either from Lundsten's family, Lundsten's doctors, or from Lundsten herself. Further delay was also caused by Aetna's use of independent peer reviewers. None of these delays were excessive or unreasonable. *See, e.g., Seger*, 2005 WL 2249905, at *12 ("Given ReliaStar's repeated efforts to obtain the independent medical review, and the fact that it advised Seger of the cause underlying the delay of her appeal, Seger was not deprived of a full and fair review of her claim"). Moreover, during the six-month review process, Lundsten received six letters from Aetna regarding the status of her appeal, followed by a final letter upholding the denial of benefits. The parties also spoke over the phone on multiple occasions. *See, e.g.,* DAPFF, ¶ 6 ("SES [Simpson] called EE [Lundsten] on 03/06/12 at 4:01 P.M. and advised that she did have time to send in a letter from her sister as tolling had been extended to permit more time from Gorelick's office to respond to parameds.com request. SES advised that records from 3 other providers had been received. . . ."); *see also id.*, ¶ 17; PPFF, ¶¶ 6, 8, 17. In the Court's view, this qualifies as an on-going, good faith exchange of information, and the resulting delay was completely inconsequential. *Pava v. Hartford Life & Accident Ins. Co.*, No. 03

CV 2609 SLT RML, 2005 WL 2039192, at *10 (E.D.N.Y. Aug. 24, 2005) ("The pattern of interaction between the parties demonstrates that Plaintiff sought and waited for Hartford to exercise its discretion, and that she relied on this exercise before coming to this Court. It also shows that the delays in making determinations on her claims cannot be characterized as dilatory or as evidencing bad faith on the part of Hartford. As a result, the delay was nugatory, and should not be held against the Defendants"); *compare, Rasenack* at 1317 ("we do not consider a single contact over such a long span of time [eight months] to be an 'ongoing, good faith exchange of information'").

Lundsten argues that it was unreasonable for Aetna to delay its decision pending receipt of Lundsten's award of Social Security Disability Benefits. This is a strange argument because Lundsten repeatedly told Aetna that she would provide a copy of the award (ultimately, she never did). PPFF, ¶¶ 17, 18, 19, 22. It is true, as Lundsten notes, that plan administrators are required to address this brand of evidence and "provide a reasonable explanation for discounting it . . ." *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 700 F.3d 1076, 1087 (7th Cir. 2012); *see also Holmstrom v. Metropolitan Life Ins. Co.*, 615 F.3d 758, 773 (7th Cir. 2010). This is an entirely different issue from the one at hand, that being whether the defendants substantially complied with the time limits for deciding an appeal from the denial or termination of disability benefits. Lundsten argues that Aetna should have obtained the information on its own without waiting for Lundsten to provide it. Again, this is beside the point.

It is also nonsensical in light of Lundsten's unequivocal statements that she would submit a copy of the award. Ultimately, it was Lundsten's obligation to provide information in support of her claim. The Plan should not be penalized for affording Lundsten the time and opportunity to submit information in support of her claim, and Lundsten should not be rewarded for failing to submit evidence that she promised to provide.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Defendants' motion for leave to file a sur-reply brief [ECF No. 58] is **GRANTED**;

2. Defendants' motion to file a supplemental response [ECF No. 61] is **GRANTED**;

3. Lundsten's motion for partial summary judgment [ECF No. 32] is **DENIED**; and

4. The Court will conduct a telephonic status conference on **June 25, 2014** at **10:00 a.m. (Central Time)**. The Court will initiate the call.

Dated at Milwaukee, Wisconsin, this 30th day of May, 2014.

**BY THE COURT:**

**HON. RUDOLPH T. RANDA**
**U.S. District Judge**